Case No. 221-5113, Citizens for Responsibility and Ethics in Washington v. United States Department of Justice, Appellant. Chief Harrington for the Appellant, Chief Weinman for the Appeal. Good morning, counsel. It's good to be back with you in person in the courtroom for arguments this morning. Ms. Harrington, please proceed when you're ready. Thank you, Chief Judge Srinivasan, and may it please the Court, I'm Sarah Harrington for the Department of Justice. We ask this Court to reverse the District Court's order to release Part 2 of the memo to Attorney General Barr because that memo is self-evidently privileged. This case implicates the government's important long-term institutional interests in protecting the integrity of agency decision-making. If agency advisors are chilled from giving principals their most candid advice— I'll just ask you to boost your decibel level just a little bit, or maybe use the microphone. Yeah, of course. Sorry, the shield, I think, makes it harder. Much better. Okay, great. Thank you for letting me know. If agency advisors are chilled from giving their most candid advice to principals, that will lead to worse outcomes for agencies and for the public at large. We do not want agency lawyers to write advice memos as if they are press releases, even, and I would say particularly, in high-profile and politically sensitive matters, which is surely what was happening here. I don't understand the District Court to have disagreed with those general propositions. Do you? The District Court thought that the government's submissions were misleading and incomplete, that they missed— I understand, but the propositions that you just presented to the Court, I don't see that the District Court did not agree with those general propositions. What she was dealing with was the record before her. Is that not correct? Well, Your Honor, what I'd say is she wasn't dealing with the full record before her, and we think that's where the real error in the District Court's decision was, because the District Court thought that the government's submissions were misleading and incomplete, and the remedy for that is not to grant summary judgment to the plaintiff, but to order in-camera review, and that's what the District Court did. And once the District Court reviewed the document in-camera, then the document itself was part of the summary judgment record, and she wasn't—it was an error for the District Court to grant summary judgment without regard to what the memo actually said. Can I ask you a following question? So suppose that what happened is that there's a conversation between the Attorney General and Superintendents, and the Attorney General says, everybody knows there's not going to be a charge brought here. That's just forbidden, so no charge will be brought. But just as a thought experiment, I'm just curious about whether we think that were a charge possible, the evidence would support the bringing of a charge, and that the evidence would show the commission of a crime. But it's a pure thought experiment. I'm not going to do anything with it. I'm just—I just want to sort of reach a decision on my own for my own self about whether that would be the case. Can you let me know your views? So I think in general, just a thought experiment memo wouldn't necessarily be deliberative and pre-decisional. It might be deliberative, but it wouldn't be pre-decisional. It would not be pre-decisional. Right. Or at least it would be a much harder case, and we're not asking you to— Why would it even be deliberative? I'm sorry, I couldn't hear you, Judge Shadoff. Sorry. Why would it even be deliberative? Well, I mean, if you had—it would depend on what the content of the memo was. If you had—if it reflected some sort of back and forth in reaching a conclusion about that thought exercise, then it might be deliberative. But we're certainly not asking the court to rule on whether a thought exercise memo would be entitled to protection under Exemption 5. Can I just ask you, when you say that it would at least be a harder case, and I think it may not be the case, that it would be pre-decisional, that's because there's no subsequent decision in play, because it's just essentially an academic thought experiment. Because it's expressed by TDEP as an academic thought exercise, as I understood your hypothetical. Yes. And so that's not to say that an agency couldn't say, well, let's decide this question. We're not sure what we're going to do with it, but it will be helpful to future decision-making down the road. We don't know exactly what those decisions would be. I don't want to say that that couldn't be protected under Exemption 5. Right. Because there, there's a potential decision. I mean, you could— Right. It could be a circumstance in which the principal would say, I don't think I'm going to do anything with this, but in order to make an informed assessment of whether I'm going to do something with it, let me know your views. I understand that. But I'm just positing a situation in which the way it's teed up is the principal says, we're not going to bring a charge. Everybody knows we're not going to bring a charge. And there's no other particular reason I'd like this information. I'm just curious, for my own kind of academic interest, what you think about whether— I think that would not fall within Exemption 5. But of course, that's not what happened here. Here, the decision that's addressed in the memo is whether the evidence that's set out in Part 2 of the Special Counsel's report was sufficient to show that then-President Trump had committed an obstruction of justice offense. And the reason that that decision was made was because the Attorney General was deciding what, if anything, to say publicly about— So the second part of that, then, for the construct that we've developed so far, is essential. The first part of it alone wouldn't be enough because the first part of it might go to no end. And I think in the typical situation in which the deliberations are about whether the evidence shows the commission of a crime, it's going to be obvious what the reason is for that assessment because somebody might bring a charge. I mean, in the typical prosecutorial complex, I don't even know that you would need or process purposes a specification that the ultimate end is a potential bringing of a charge because it would just be self-evident. That's what prosecutors talk about. This case seems different because here, that obvious option is just off the table by everybody's estimation. So then the question becomes, well, okay, then what's the purpose of what would otherwise be a thought experiment that wouldn't trigger the deliberative process privilege? What would be the purpose of that? And you've identified one and your briefing identifies that one, which is the potential public disclosure to Congress. And then I guess the question in my mind is, where is that supported in the declaration? So I guess it was understood to be the backdrop to the FOIA request because it was the statements to Congress in the letter to Congress and in Attorney General Barr's later testimony the following month to Congress that prompted the FOIA request. The Attorney General announced that the decision he had made was about the sufficiency of the report. That's the decision he said he made in the letter. That's the decision he said he had made in his testimony. That's the decision about which plaintiff's crew sought information in his FOIA request. That's the decision that's identified in the decision line of the memo that was never redacted in the parts of the introductory paragraphs that were never redacted. And that's- When you say that's the decision, you're talking about- The decision about the sufficiency. But it was all- That could be a thought experiment. What the decision was announced, the decision came to light because it was announced in a public way to Congress, right? And so it's true that we could have been clearer about the reason that the decision was being made in our declarations in our settlement judgment meetings. And I want to say forthrightly, we regret that we caused confusion with the way that we wrote those. And we certainly didn't intend that. And we sincerely apologize for that result. But it's clear also now in part one of the memo, which we have released, we did not appeal all of the ordered release of that part, that that sort of further explains the context for the decision. It's hard to see part one of the memo as evidence submitted by the government that would show the purpose because part one only comes out after the district court issues its ruling, right? And then you chose not to appeal on that. But in terms of whether the district court should have understood that the purpose for which the assessment was being made was with an eye towards public disclosure, we would have to precede the disclosure of part one because that wasn't out there yet. So to your sense, there is one statement in the Colborne, the first Colborne declaration in paragraph 17, that mentions that the attorney general had made a public statement after making this decision. And that doesn't go all the way to what you're asking. It doesn't specifically say that was the reason. But there was an indication of that. Where is that? It's page 17 of the Colborne declaration. Paragraph 17. I'm sorry, paragraph 17, yeah. I don't have the joint appendix of the first. There we go. It is joint appendix 51. And it says, you know, following receipt of the memorandum, the attorney general announced his decision publicly in a letter to the House and Senate Judiciary Committees. So that gives context for why the decision was made. It doesn't expressly, it's not an express link, I think, which is what you're asking about. But the more important point is that once the district court ordered in-camera review, she had part one of the memo. She had the whole memo. And it was error for her to grant summary judgment to the plaintiffs based on her view of the pleadings and the declarations without regard to what was actually in the memo itself. So the remedy for incomplete pleading... But why? Because if there may be something that she could tease out from the materials that she reviews in-camera, but unless the government is telling her that that's the basis for the assertion of the deliberative process privilege, I don't know that a district judge is supposed to make arguments for the government. It would be one thing if the declarations were something for the briefing, pointed her to this as a potential, pointed the district court to this as a potential rationale, and then the district court sees the memo in-camera and sees that it confirms an argument that the government's making. The question I'm trying to get at is, what would give somebody that impression? Because typically, when the assessment is whether the evidence shows the commission of a crime, it's self-evident that the reason that's being asked is for purposes of determining whether to bring a charge. That's off the table. So then the question becomes, well, okay, then why was that assessment being made? And I didn't see anything in the declarations or in the briefing that would give an indication that this is the reason the assessment was being made. So, Chief Justice Robinson, I don't think that the question, what is the reason this decision is being made, is the essential question. The question is, what is the decision that's being made in the document that we say it's The decision that's addressed in the document, the advice about, the decision about which advice is given is the sufficiency determination. It's not about whether to make a public statement. The reason that that decision was being made was because the Attorney General was contemplating whether to make a public statement. But that's not the decision, that's not the actual decision that's being addressed in the memorandum. And so I think there was confusion. The district court thought that we were trying to pretend or, you know, give the impression that the decision that's being teed up in the memo is whether to actually prosecute that then-sitting President Trump. Of course, that's not, we never said that, and we would have had no reason to suggest that that was the decision, because first of all, nobody would have believed us. It was well-known, as you say, at the time, that that wasn't permitted. You couldn't- I would say, by the way, on that score, especially with the, and I appreciate and understand that the government has expressed regret for misimpressions caused by the documentation that was filed in the district court. If you only look at the reply brief in support of summary judgment, there's a lot of material in the reply brief that would lead, I think, a natural listener, a natural reader, to assume that the decision that was on the table is whether to bring a charge. Because the way that's teed up is the opposing side files a document that tells the district court, well, this can't have been the decision. And the response wasn't the obvious one, which would have been, oh, you're right, of course that's not the decision. Something else was going on. It's to resist the argument that was being made and to say, no, that could have been the decision. And it says that a couple of occasions. So I can understand, I think, why the district court would have been operating under that impression. So I'm not going to, I don't disagree with anything you've said. I'll just offer it by way of explanation that our understanding of what the argument that the plaintiff was making was that there was no decision at all left for the attorney general to make. And that's the decision because the special counsel had made all the determinations and the attorney general hadn't sort of gone through the process necessary to challenge those. And so that was what we were resisting. And I will concede that we used language that was not as clear as it could have been. In particular, a repeated use of the adjective prosecutorial, we see now caused great confusion. I want to say that I think a sufficiency determination is a prosecutorial determination because it is part of the process that a prosecutor would go through before deciding whether to bring charges. And on page three of our reply brief, we define the prosecutorial determination. And this is on page 183 of the joint appendix. We define the, you said the prosecutorial, the attorney general was making a decision about the prosecutorial decision regarding whether the evidence developed by a special counsel Mueller's investigation was sufficient to establish that the president had committed an obstruction of justice. That is the decision that's addressed in the memo. And so we think that and other things give context to our use of the word prosecutorial to describe what was going on. We also think just the larger context, the backdrop of the request and the things that were happening in the world made clear that the attorney general could not have been contemplating an actual prosecution. And it wouldn't have been. I'm sorry, Judge Rogers. It wasn't the prosecutorial. It wasn't the use of the word prosecutorial. Although I take your point, I appreciate the acknowledgement that the word prosecutorial could be misleading. It was other portions of the reply memorandum where it talked about the decision whether to initiate a prosecution as if that were the decision on the table. And I can point to those. I think you probably know what those statements are, but they're in there. And that's the response to the argument that was put forward by crew. And it didn't make the obvious response, which is, oh, that decision was never on the table. And you may be right that based on everything we know about the world, especially in hindsight what we know about the world now, that that decision, in fact, wasn't on the table. But the way that it was written could well lead a reader to assume that that decision, in fact, was on the table because that's the way the government was describing it in the reply memorandum. I understand. I can say, again, my way of explanation is that we were responding to what we viewed as crew's argument that there was no decision for the attorney general to make. And so, and I understand that I'm not going to fight what you're saying, that the language we use had the result of misleading people and causing confusion. But again, the remedy for district court for, excuse me, government pleading in a FOIA case that are misleading or that are incomplete is to order in-camera review. And that's exactly what the district court did here. In her minute order ordering in-camera review, she said she wanted to do it to help her make an informed de novo determination about the privileged nature of the document. And so once she has the document, that is part of the summary judgment record. And if at that point, the district court wants to have more sort of adversarial process, once the district court can see the ways in which the district court, excuse me, the government pleadings fell short, then the court can order supplemental pleadings and supplemental briefing. But what it's not appropriate for the court to do is to grant summary judgment to the of the government pleadings, even when the document itself, which is at that point, part of the record is self-evidently privileged. Well, let me ask you about the government's response to the district court's first order, where this was after in-camera review. And the district court made the statement that under the statutory scheme, the burden is on the government. And having read what the government presented it, the district court concluded that the government had not met its burden, and that the district court was not obligated to try to parse out something, much less to fill in the blanks, that either the government meets its burden or it does not. Then when she issued the opinion on the motion for stay, she repeated that. And what I didn't find is what your argument here has been in part, mainly that the district court failed to appreciate that in-camera review was the solution to the government's deficiency. Where was that argument presented to the district court? So I don't have, and my red light is on, I assume. Oh, yeah, please. But I don't have our stay motion in front of me, and so I can't point you to the exact pages, but I believe we did say the document itself is self-evidently privileged. What document? The memo. Once she viewed the memo in-camera. The entire memo, reading section one as well as section two, or part one as well as part two. Our view is that part one of the memo was also privileged, but we decided not to appeal with respect to part one. No, no, counsel, understand my question. I understand you to say that the reason in-camera review is allowed is so the district court in part can understand what's going on, even if the district court has concluded that the Yes. Where was that argument presented to the district court? Because the way I read it's stay order, it reaffirmed that the government never made the argument that some obligation was on the district court having conducted in-camera review. In other words, just as you say it was self-evident. So too, it seemed to me that on the government's concern here, that argument would have been one that would have come to the government's attention in discussing how to respond to the district court's initial order. I don't find that. Rather, as the district court's stay opinion suggests, what the government did was to, I think the district court used the word, double down on its argument. Right, so we don't agree with all the district court's characterizations of what we've argued in the case. It was a premise of the district court's request for in-camera review. The district court in the minute ordering in-camera review said that the court wanted to make a de novo determination based in part on the memo, that seeing the memo would help the court make a de novo determination. That is the government's position, and I understand the argument. What I'm asking is whether that argument was ever presented to the district court in hype verba. In other words, whatever the deficiencies of the agency's declaration, if the district court, sua sponte, decides to conduct in-camera review over the government's opposition, then that is the review that determines whether or not the government has met its burden of proof, or maybe your argument is only that that can give rise to an obligation, sua sponte, by the district court to seek further declarations from the government. What's that argument presented? So, again, it was said by the district court in her request for in-camera review, and so it's not, you know, you wouldn't normally require a government lawyer to say, you have to look at this piece of evidence and that piece of evidence. It's just part of a semi-judgmental record, and the district court understood. Does that respond to my question? Is that the government never made that argument to the district court? I don't know if we said it expressly in our stay motion, to be honest. That's all I need to know. Thank you. I don't know if we said it expressly. Ms. Harrington, I want to ask you a different kind of question here. So, in Sierra Club, so in the declaration in this, your declarations say that the attorney general saw this document prior to sending his letter to Congress, right? And you cite that for the proposition that this is pre-decisional. But in Sierra Club, the court said that that's not enough, that the document has to, quote, help the head of the agency, whoever it is, here the attorney general, help the attorney general formulate his position. So, and it's your burden, it's the government's burden to show that this was, and if it isn't that, it's just explanatory, right? You agree with that. If it's just a memo that explains a previously made decision, then it's not pre-decisional, it doesn't qualify. It has to help him formulate his decision. And what can you point to in the record that suggests that that's what this was? I don't think it's quite right that the document itself has to help the attorney general formulate his decision.  What's the difference between those two things? Well, I point that out just because- The advice, the document contains the advice that's in it. The document contains the advice, but this particular document, it became clear, was finalized and signed two hours after the attorney general sent the letter. And so I don't want to answer your question and give the misleading impression that- No, let's, I have a different question about that. But I want to know what, I mean, assume I think that's what the law is, can you point to anything in the record, anything at all, that suggests that the attorney general was formulating his position during this time? That is, that it wasn't a memorandum drafted in support of a decision that had been made Friday night. That's what I'm looking for. Is there anything that suggests at all that as far as the attorney general was concerned, this question was open at any time during those three days? And I think, yeah, so there are declarations that say it was pre-decisional that the- Wait, wait, but saying you're pre-decisional is the conclusion. It doesn't tell us whether or not, I mean, even if I'm willing to accept, well, I will, I accept the declaration's proposition that he saw these ahead of time. Fine. That's what you say. But I don't think that answers our question about whether it's pre-decisional. It'd be, he could have seen it ahead of time and it could have been a document that was simply drafted to explain the decision he had made Friday night. It seems to me you have to show something more. And I'm asking whether there's anything I've missed here. But there's a couple of things in it. In the declaration, it describes that there were various earlier drafts of the memorandum. There were what? There were earlier drafts of the memorandum that were given to the attorney general in the course of the weekend over which he wrote the letter to Congress and made- about those memos that suggest that they weren't simply earlier drafts of an explanatory memo? I think if you look at the memo itself, it has all of the sort of indicia of being pre-decisional. It is written in the form of giving advice. It is not a memo that says, here are the reasons you said you're making this decision. We're writing them down, right? It's- Well, I certainly wouldn't write it that way if I were trying to protect this from disclosure. You know, I mean, why would anybody write a memo that way? I think, you know, if you're trying to memorialize- I mean, the question I'm trying to get at is, if you just look at the record we had before, just the existing record in this case, including your declarations and the document, what this looks like is that- so the first draft of the letter to Congress was done Friday night. This memo didn't surface until sometime late the next- and it wasn't issued until after the Attorney General sent his letter to Congress. And in addition to that, in his letter to Congress, the Attorney General said, this is a decision made along with the Deputy Attorney General, who was intimately involved in drafting this memo. So if you just sit back and look at the record we have, what it looks like is a memo drafted to justify or explain a decision immediately made. That's not a pre-decisional. That's not protected. And since it's the government's burden to prove that this is clarified exemption, I'm looking for any evidence to suggest that my sense of art is wrong. Is there anything I've missed in describing my perception of what I see this? What have I missed? So I think part of your question comes from the timing of the memo and the letter being written simultaneously. Part of it, only part of it. That happens all the time when you have something that's happening quickly. You could have a bench momo and a draft order come together to a judge, and it doesn't mean that the bench momo isn't advice-giving and pre-decisional. It might just be that the timing is such that you need to have them at the same time. Right. But if you look at the bench memos I get or the opinion letters I wrote in the many years I practiced law, you can see in both of them a discussion of what the options are, of what the position should be, a discussion of contrary evidence. And I don't, that's what I don't see here. It's so, and again, don't misunderstand what I'm saying. I'm simply stating to you as an observer here what the record looks like to me. And to me, the record, that impression I get suggests that this document does not qualify. And what can you do to dispel that view I have? Can you, is there anything? Is there anything in the declaration I've missed? I haven't seen, there's no emails or anything. We don't know about that. But I would say the best evidence is the memo itself, which again, is written in the form of giving advice. It's written from subordinates to a superior. The authors of the memo didn't have decision-making authority. These are all things that this court has said are in vitia of something being pre-decisional. That gave the attorney general the opportunity, the option at the end to accept or reject the advice. And the substance of the advice was given to him before he made his decision. That we know from the declaration. I think to the extent you're suggesting that there is a suspicion that the attorney general said to the drafters of the memo, here's where I want to come out at the beginning of the process. That wouldn't be enough to make it not pre-decisional or deliberative. Well, but why not? You see, because it's the government's burden to prove this. Not, I mean, you have to make your case that this is in fact pre-decisional. And it can't, we all know how opinion letters are written. I mean, you're totally right about this opinion letter. It says it's in a, it says, you know, it's addressed to the attorney general. It's addressing the legal issue. But come on. I mean, law firms write opinion letters like this all the time. That's what they look like. And they're designed to support a decision that was already made. That's what this one looks like. But I don't think that there's any indication of that in this case. And there's no indication anywhere in the record, and particularly in the memo, that the attorney general adopted the reasoning of the recommendation memo as his own. I just want to say, I think it's particularly important when you have a decision maker say to his or her advice givers, like, here's sort of where I'm thinking we should go with this. It's particularly important to protect the ability of the advice givers to give candid advice, because you especially want them to be able to say, you said you wanted to do this. This is why we think it's not a good idea. Here are things you should think about for the long-term consequences of that. And so we want to be able to protect ex ante their ability to really give their candid advice, in particular when they're trying to talk someone out of something. And so I don't think the fact that you might think that the attorney general gave an indication of where he was heading would suggest that it's not pre-decision at all. Let me make sure my colleagues don't have additional questions for you, Ms. Henryton. Thank you. We'll give you some rebuttal time. Good morning, and may it please the Court. The Department of Justice made a strategic decision in this case to defend withholding portions of the memo at issue if legal advice and prosecutorial analysis provided the attorney general to make a prosecutorial decision. Pru challenged that characterization, arguing that the attorney general lacked the authority to prosecute the memo, prosecute the president, and that the memo's true purpose was to falsely shape public perception about the special counsel's, I'm sorry, the special counsel's obstruction of justice evidence in advance of the report's publication. So two things, just to be clear. One, you argue that the attorney general had delegated the prosecutorial authority here to the deputy attorney general earlier on, and I'd like to know whether you stick with that. And secondly, one of counsel's arguments that we just heard in response to Judge Tatel's particularly the hypothetical that even if the attorney general has said, here's what I want to say to Congress, now write the memo justifying that. And the memo has been written, but it comes in in saying, well, we've looked at this independently, and we think that's the way to go. Or here are some other options for you to consider. What's your response to that? Well, Judge Rogers, as to your first question, if I can. Yes. I'm sorry, would you repeat your first question? I was caught up in your second one. I apologize. My first question, you state that the attorney general. Oh, the authority. Long before these events that we're discussing this morning, had delegated to the deputy attorney general the decision whether to prosecute the president.  Our argument, Your Honor, was actually that having appointed a special counsel, the matter resided with the special counsel, and under the department's regulations, they carve out a limited role for the attorney general. And where the attorney general disagrees with the decision that the special counsel makes, there is a process that the attorney general must follow. We did. I understand it. What your document said was the decision to prosecute has been delegated, that the deputy attorney general was to decide about the appointment of a special prosecutor. All right. All that is consistent with what you said. But I want to be clear as to what is your position before this court? Well, we remain of the view that once the special counsel was appointed, the attorney general did not have the authority to prosecute the president. That was outside of his purview. But we also argued to the district court and would argue here today that separately, under the department's own policy about not prosecuting a sitting president, he couldn't have prosecuted the president either. I hope that answers your question. Judge Rogers, I'm sorry, did you have a follow-up? Were you going to follow up? Well, I know you had a second question. I'm sorry to my colleague. Was he going to follow up or was he going to ask a question? He's prepared to answer the second part of your question. So you just keep going. And the second part of your question was as to the memo, and if the memo were phrased as the way you described. You know, there are a variety, obviously, of hypotheticals, some which could be covered by the privilege, some which could not. But we submit that the circumstances here, it's clear that this was a process that was memorializing a preordained decision. And that's clear from the context. As the district court noted, when the department got the special counsel's report on March 22nd, the volume devoted to obstruction of justice was nearly 200 pages in length. And of course, beneath that report were hundreds if not thousands of pages of evidence. The department claimed that it looked at all that stuff, it applied the principles of federal prosecution. And as the district court noted, the department had barely had time to skim the report, much less analyze it. This is just further evidence that also was reinforced by the emails that were disclosed to crew on which the district court relied. The district court, as you know, prepared a whole chronology of how this played out. The memo came to the department sometime on March 22nd. By the evening, they had already put pen to paper to draft the letter to Congress that would set forth the attorney general's position that the evidence was not sufficient to prosecute the president for obstruction of justice. You know, by the next... Well, suppose you're right about that. Why couldn't it be that, okay, so Friday night, let's just assume, yeah, maybe they had a pretty good view about what their position was Friday night. They could read the executive summary. Not so hard to even read a couple of hundred pages. Maybe they didn't have time to get into the underlying documents by that point. So during the week end, they evolved this opinion letter, which may well have dug much deeper and reaffirmed their original instincts. Why wouldn't that be perfectly, perfectly under the exemption? Well, you're right that there could have been more play in the decision-making process than I've suggested. Wait, say that again, what? There could have been more play in the decision-making process than I have just... Although we... But that said, what that would mean is that earlier version would be protected by the deliberative process privilege. But the timeline here shows that by the time the attorney general got the memo, had already received all the advice, he had considered that advice, he had acted on that advice. Well, how do you know all that? That's not in the record. Yes, it is because he wrote a final... He wrote a letter to Congress memorializing that. The group were working on those two documents in tandem. There's nothing to suggest any variance between the letter to Congress... But I don't understand... Oh, I'm sorry, go ahead. Just one thought, do you think there are any circumstances under which the development of a memo simultaneously with the making of a decision could be pre-decisional, could be deliberative? I think there are circumstances, yes. Give me an example. This is not one of them. But just give me an example of one that would be. Well, it would have to be a case where the decisional process was still an ongoing process at the time the memo was created, because it all goes back to the purpose of the deliberative process. So is that the defect here? Is the defect from your perspective that the government hasn't shown that? Yes, that is... What about Ms. Harrington's answer to my question? She should just read the opinion letter. I'm sorry, your... Her answer to my question about that was the best evidence that this is deliberative, that the opinion letter is the memo itself. We don't... Well, the memo... Why is that wrong? It's not wrong, but here we have... Well, it has to be wrong for you to win your case. Well, no, here we have the added benefit of the timeline. We have external... We have evidence that was introduced in this record that came from the government in response to Cruz-Foya request, emailed, that lay out and give much more detail to the process that So I didn't understand the district court to accept the proposition that this was a fait accompli and that all the decisions had already been made, and this was just tapering over decisions that had already been made. And the reason I didn't understand the district court to support that proposition is that the district court acknowledged that this actually might have been protected by the delivery process privilege if the right arguments had been made by the government, right? That's what the district court said on page 338. Yes, that is... And it couldn't have said that if it thought that this was just a fait accompli, right? So it was possibly protected by the delivery... If I can just finish, it was possibly protected by the delivery process privilege, and even the district court understood that to be the case and accepted that proposition, right? You're correct. She did not go... The district court judge did not go as far to say this is a fait accompli. She did, however... But that is the argument that you're making, I think, and I... Well, all we're suggesting is the evidence strongly suggests that this is not a true deliberative process, that it was prejudged from the outside. I don't think she accepted that proposition either because she thought it actually could have been a true deliberative process if the government had made the right arguments about what the deliberative process was going towards. Yes, but her decision also notes how little time there was for the department to have truly engaged in a deliberative process. And that's when she's discussing the separate ground for her opinion, which is that the deliberative process has to be decisional given the timeline and the authority and the purpose of the deliberative process, which is to protect a process, not simply deliberations that are completed. But I mean, I think we have to be very careful about adopting any kind of doctrine that would prevent the following kind of dynamic from playing out in the government. The principle says to subordinates, I have a pretty good idea of where I'm going. I think I know where I'm going. Now, obviously, persuade me otherwise if you think otherwise, but let's start to write up the analysis. Give me a recommendation. Obviously, if you're thinking through it and you think differently, try to persuade me, but I've got a pretty good idea of where I'm headed. That still, I think, would fall within whatever recommendation ensued as a result of that would still fall within the deliberative process. I certainly agree that had the government presented those facts, this would be a much stronger case for them. That, of course, is not the argument they made. That's not what the district court found. And the district court also noted that this was a process that all the parties were working in tandem, including the attorney general. But that part, I don't understand. That part of it doesn't seem to do a ton of work because it would be natural for all the parties to be working in tandem if it was all part of the same decisional calculus, which I think everybody, including the government, agrees it was. It's just that the decision had been finalized until the ultimate decision was made to send a letter to Congress. Again, I think it would raise the question of whether this was a true deliberative process. But as the district court pointed out in its state decision, the primary reason for her ruling was the arguments that the government had advanced as to why this mammal was privileged were demonstratively false. Right. So can I focus? I'm glad you went to that. Can I focus on that for a second? Yes. So if we're not talking about pre-decisional in terms of temporal sequence, if we're talking about whether the government pointed to the right decision, then I take your argument, and I understand the district court's argument, but the decision that was being pointed to was perceived to be an ultimate decision about whether to bring a charge. And the response to that is, well, that decision was never on the table. So that, to the extent that that's the argument the government was making, is just contradicted by the government's own acknowledgement at this point. So that one can't be it. So then the question becomes, well, what about this other purpose for having this assessment of whether the conduct constituted a crime? And the other purpose would be for purposes of determining whether to disclose to Congress. Now, as to that, the district court said that that could have been actually an appropriate occasion for assertion of the deliberative process privilege. The district court just didn't understand that to be an argument that the government was making. And my question about that is, the memo to Congress says that it was informed by OLC's determination. So it's a matter of the public record, at least, that the memo that now is the subject of your FOIA request was in part going towards that purpose. And if that's the case, then does it matter that the declarations and the government's submissions might not point to that? Yes, it matters because this is a FOIA case. And FOIA cases are unique in civil jurisprudence because the FOIA is a mandatory disclosure statute subject to narrow exceptions. And because of that, the government, even though it's the defendant, bears the burden of proof. And if it fails to meet that burden of proof, the presumption of disclosure prevails. So it was incumbent on the government, not the district court, as they argue, to provide its full arguments, to supplement them as necessary. The jurisprudence from this court teaches that. For example, in Von D. Rosen, the government tried to make a new argument on appeal to support its Exemption 5 claim. And this court said, you had ample opportunity in the district court. There was briefing on cross motions for summary judgment. The precise situation here, you failed to raise it, and you have waived the right to raise it now on appeal. The government here also had ample opportunities. There were multiple briefs filed on cross motions for summary judgment. The government submitted three separate declarations. And at no time, either before or after the court ruled, did the government ask for an opportunity to supplement the record or better explain its arguments. It ignored completely rules 59 and 60, which were the obvious procedural vehicles for a party that believes that the district court just misunderstood their argument or overlooked something. So this is a case that, in the end, it was not decided as a sanction, as the government suggests. The order of disclosure flowed naturally from the fact that the government had failed to carry its burden of proof. And as important, the government talks about the importance of the deliberative process privilege, which, of course, the district court acknowledged and noted that her decision rested on the facts here and was in no way with any disregard to the importance of the privilege. But equally, if not more important, is the fundamental principles of FOIA. So let me ask this as a follow-up. If the declarations had said at some point the following, and I'm looking at J1897, which is the underdrafted portions of the memo, and section one is entitled, the department should reach a conclusion on whether prosecution is warranted based on the findings in volume two of the special counsel's report. If the declarations had said the memo was designed to assist with the determination of whether the department should reach a conclusion on whether prosecution is warranted, and the reason the memo was designed to do that is because it could result in public disclosure to Congress. Would that, at that point, even the district, I think the district court would have thought that the deliberative process privilege would apply, and I take it you wouldn't disagree with that proposition. I would not disagree, although what the court actually said in her opinion at JA250, which is footnote 11, the district court said the court recognizes that internal deliberations about public relations efforts could be covered by the deliberative process privilege, and I think it's very telling here that in its reply brief on appeal at page 11, the Justice Department expressly disavows that this was a public relations effort. So, on the one hand, they're arguing that the district court failed to consider other And yet, at the same time, they're disavowing that this was at the bottom of page 11. Yes, correct. Although Attorney General Barr's decisional process culminated in the issuance of public statement, the privilege advice that issued in this appeal, which the district court reviewed in camera, is not about public relations. Exactly, and I don't think you can reconcile that then with a claim that the court, whether it's framed as what to tell Congress or what to tell the public, it was in, as the district court viewed it, that was a matter of public relations, and that was the argument that district court identified that the government could have raised, but did not. So, let's just disregard, for arguments purposes, the sentence at page 11 of the reply brief, and let's assume that a sentence along the lines of what I was hypothesizing was in the declarations. Then, at that point, you don't take issue with the proposition that the deliberative process privilege would have been appropriately found. If the government had raised that argument, yes, but as the district court noted, it's not up to the court to tease out arguments for the government. The burden rests on the government to fully present its arguments, and it did not do that here. I do want to stress something that I think the government glosses over entirely, which is that the construction that Crewe and the district court made of the government's arguments to be arguing that the attorney general was making a decision about whether to prosecute the president did not result from some careless slip of the tongue, so to speak. By my count, in the government's briefs and in their declarations filed below, the word prosecutor, some variation of it, was mentioned 74 times. In addition, the Justice Department repeatedly invoked the authority of the principles of federal prosecution as providing the analytical framework for its prosecutorial decision making, and the purpose section of that manual states expressly it's intended to guide the exercise of prosecutorial discretion with respect to commencing or declining prosecution. And as this court noted, it is questions of the government. When we challenged the authority of the attorney general to prosecute the president, not only did the government double down, as the district court said, but it never even hinted that we had misunderstood its arguments. And in its summary judgment brief, it devoted nearly a full page to case sites standing for the proposition that when the department is deliberating over whether to prosecute, those deliberations are protected by the deliberative process privilege. So this was not an errant slip of the tongue. This was a repeated argument that the government made in the district court that misled both Crewe and the court. And the in-camera review, the government's position here, I'm not sure I quite understand it. We agree that having looked at the document in camera, that resolved the issue because what the court was facing was competing arguments, conflicting arguments about the nature and purpose of the memo. And it resolved that factual conflict by reviewing the memo. And what the court found from its in-camera review was that the memo did not say what the government said it said. Its purpose was not as identified by the government. Suppose that the memo, what's now unredacted, was what was disclosed at the outset. I think that would have made it a much harder case for us and an easier case for the government because I think it's clear from the district court's opinion that what troubled the court is that the government deliberately redacted any reference in the memo to its policy about prosecuting a president. And it's really inexplicable because here they have argued that that was such a central fact that was widely and publicly known that it was just sort of baked in. If that's the case, why did they redact all references to that policy? Why did two declarants from the Justice Department assert under penalty of perjury that that privileged deliberative material that couldn't be disclosed? And why did the Attorney General tell Congress in his March 24th letter that he made his decision that the evidence was not sufficient to prosecute the president without any regard for constitutional barriers, that it was a standalone decision? So I just don't think any of that can be reconciled with the government's position on appeal. Um, Ms. Weisman, uh, let me ask you how this case would come out in your mind if there were one slight different. Suppose the draft letter to Congress had not been prepared Friday, but wasn't prepared until Sunday after this opinion, after this memorandum was prepared and went through all the drafting. Would it come out differently? So your question is if the memo was not prepared until Sunday? No, if the letter to Congress hadn't been prepared until Sunday. In other words, I think we know that they prepared a draft of the letter to Congress Friday night, right? Right. Suppose they hadn't done that. Suppose they had worked all weekend on the memo and then Sunday afternoon after the Attorney General saw the memo, they wrote the letter to Congress. I'm not sure it would necessarily change the equation, but it would be very different. I mean, that's obviously not what happened here. Yeah, I know. That's why I said. Right. I mean, I think, again, the question becomes what role did the memo play in the decisional process? And as long as they're, when the memo, when the memo was created, if it was created while there was an ongoing decisional process, then I think there's a strong argument that it's protected. Well, what would the government have had to show in this case to make that argument? What would have satisfied you? Let's go back to the real facts. The letter to Congress was drafted on Friday. The memo comes up on Monday, on Saturday. But just stick with the facts we've got. What would the government have had to show here? As you point out, it has the burden of proof. What would it have had to show to convince you that this was, in fact, deliberate? It would have had to show that at the time the memo was finalized, there was still an ongoing deliberation, which is not the fact here. Now, the government has responded that the Attorney General could have changed his mind, but that's very unrealistic. The Attorney General had publicly committed to Congress, and the letter had become public, that he and the Deputy Attorney General, essentially acting on behalf of the department, had made this determination. I think there's no realistic expectation that he was going to change his mind. So again, I think what you have to look at is what role does a document play in a decision process? Because the whole point of the deliberative process privilege is to protect the integrity of the decision. Suppose there was evidence that when the Attorney General got the draft of this memo in for the first time, he convened a meeting of all his people, and they had a huge debate about whether this memo was, in fact, accurate. That is, whether the conclusion that there was insufficient evidence to charge the President, that was a debatable question. Would that have been enough? I'm sorry, I couldn't hear all of it. If the conclusion was that there was insufficient... No, if there was evidence that there had actually been a healthy debate around the Attorney General about whether there was or was not sufficient evidence. Well, that would be evidence to suggest that the document did, in fact, play a role in an active, ongoing deliberative process. Right. So that would be enough. That's one thing. That would appear to be enough. Yes. Because again... And so if the Declaration had added a sentence which said, the Attorney General, I don't have the language, but it says, the Declaration says that the Attorney General saw, reviewed a draft of this memorandum before Sunday. And then it had added another sentence which said, and convened a meeting at which there was a healthy debate about whether or not there was sufficient evidence to indict the President, then that would be enough for you. Right? I'm still... That's all it needs? No, because it wouldn't... You still have to look through the final memo itself. That would support the notion that earlier drafts of the memo were pre-decisional and should be protected by the Delivery Process Provision. But if it's the case that based on everything the Attorney General received, and that appears to be the case here, he made a decision, he considered that advice, he made a decision, he conveyed that decision to Congress, and then he memorialized that decision was memorialized in a memo, then you still have... Earlier drafts might be protected, but it doesn't change the fact that at the end of the day, if the memo is just memorializing a position that the agency settled on, which is the language from Fish and Wildlife and the Supreme Court, then it is not pre-decisional. Now, I want to follow up on a question Judge Schadl asked, but only if Judge Schadl is not going to follow up. No, I'm not. You should. Okay. Then, as I understood the question that he asked you, he said, what if the letter to Congress had post-dated the approval of the memorandum so that it would have happened on Sunday, and you thought that would have been a different case? Do you acknowledge that that might be... That would be a different case, I think. And my question is, is that not this case? Because on page 208 in the second Colburn Declaration, the top of the page, it says, I've recently been informed that prior to making his decision and sending the letter, the Attorney General had received a substance of the advice contained in document number 15. So the advice for the declaration did predate the sending of the letter. The fact that the advice might not have been memorialized until afterwards doesn't necessarily change anything. What matters is that the advice actually was given beforehand. No, I respectfully disagree. Again, I think the fact that there might be earlier written version containing this advice means that up until the point a decision was made, they would qualify as pre-decisional and may be protected by the privilege. But once the Attorney General made a decision, once he acted on that advice, then a memo that memorializes his decision, which is what we think happened... I mean, I think when you say the memo memorializes the decision, it depends on what you mean. If it memorializes the deliberations and if it memorializes the recommendation, the fact that the memo isn't finalized until afterwards can't matter. I mean, what if the final memo just corrects a typo? And one of the drafts that you say would have been protected by the delivery process privilege and that came beforehand contained the typo. I don't think anybody would say that because a new memo was issued that corrected the typo after the decision was announced, that then is not protected by the delivery process privilege. Of course, we have no indication that that happened here. But again, I think you have to look at the role that a document plays in the decision making process. And if the Attorney General, as all the evidence suggests, had settled on a position and that his decision was based on advice he had received, and then he basically adopts that as his final decision, a memo containing that adoption is not pre-decisional and not entitled to protection. And I just want to point out here, I mean, this is a situation where the special counsel did an investigation and made public a, in volume two, a nearly 200-page summary of the evidence that he had found and his analysis of that evidence. The Department of Justice disagreed in some material ways with that, with the special counsel's finding and memorialized its own view and its own analysis in the memo. And the idea that that should be protected as deliberative, I think is contrary to Exemption 5 and its underlying purposes. And it's contrary to the whole point of the privilege, again, which is to protect this process. Let me just make sure my colleagues don't have additional questions for you, Miss. I have one question. I was intrigued by some of the arguments presented by Amicus. And I wondered to what extent your argument embraces the notion that, very much as the Chief Justice's first question, the counsel for the government required. Would this process be available under Exemption 5, where the only matter under consideration is a hypothetical? That there is no decision as such on the table applying the principles of prosecutorial decision-making, because that's already been decided. So that by defining decisions so broadly as to encompass this type of hypothetical investigation, I don't know, bleeds into your argument about what is the whole purpose of the requirement that exemptions under FOIA be narrowly construed. Yes, I agree completely, Your Honor. Because when you strip away, as you must, the argument that the government made in the district court that this was intended to help the Attorney General make a decision on prosecuting the president, you are left with this abstract decision-making on hypothetical questions with no real practical purpose, completely untethered from any agency action or even any potential agency action. And yes, the deliberative process privilege does not stretch that far. And again, as you point out in your question, it goes back to the purpose of the decision. Let me just follow up, if I may, Judge Tatel. So I understand a lot of the discussion here this morning, including the court's question, which I understand does not necessarily reflect its view. The suggestion is that even if here the government's declarations and other evidence presented to the district court did not make clear the nature of the decision actually being made, nevertheless, there was a decision to be made on the table, not whether to actually file charges against the president for obstruction of justice, but rather, given, as the Attorney General said, the special prosecutor did not evaluate the sufficiency of the evidence that its investigation had uncovered regarding obstruction of justice. And therefore, it remains for the Attorney General to address that. And that is, as I understand, the heart of the government's argument. The problem with that is it completely misses the question of why did that decision, why did that process have to be taken? There was no decision at the end of it. Again, it's reduced to a hypothetical, because why was it necessary for the Attorney General to make a decision about the sufficiency of the evidence if it was a given at the outset that the president could not be prosecuted because of constitutional consideration? The court's questions have suggested, well, the declaration could have been more revealing, but I just want to be clear on your position. And maybe it's that we don't have to decide this question in this case, but you're going so far, or Crue is going so far as to say a decision as to what the Attorney General should say to Congress regarding the Inspector General's report is not the nature of a decision falling within the exemption under FOIA. No, that is not our position. And I'm sorry if I have suggested that. No, I'm just trying to be clear with my questions. It is not our position. Our position is that, as the district court recognized, that could have been a potential argument the government could have raised, and it made the decision not to, and instead raised another argument that proved to be demonstrably false. So yes, had the government presented a full range of arguments, we might be in a different situation. But here, as I started out saying, we believe the government made a deliberate choice to defend this the way it defended it, and the facts didn't bear it out. It didn't meet its burden of proof, and therefore disclosure was the appropriate remedy. Thank you. Thank you, Ms. Weisman. Tarrington, we'll give you three minutes for rebuttal. Thank you, Chief Judge Srinivasan. I'd like to start, if I could, by sort of focusing the court on what I think is the central question in this case, which is what should happen in a FOIA case when a district court finds that the government's submissions are inadequate? And I think it's important to keep in mind how FOIA cases work. They're unlike other cases in that the government actually has the information, but believes that it is entitled to keep it secret. And so the government has to submit declarations, and suddenly judgment arguments that kind of talk around what the document is about. That's just baked into how FOIA works, because it wouldn't make any sense to require the government to come in and say what's in the privileged material, because we're trying to keep it secret, right? And so it happens, not infrequently, that the government's declarations and summary judgment briefs don't quite get the job done, that this court or the DDC finds that there isn't sufficient information to make a judgment about whether a document is entitled to be withheld under Exemption 5 or some other exemption. And so the remedy for that is either in-camera review or asking the government to submit supplemental declarations or supplemental briefs. There are lots of examples of this court basically remanding a case to a district court after finding that the government submissions gave no indication of what the decisional process was, or suggested that it was something maybe that it wasn't, or gave very- Let me be clear about your argument. You are stating, as I understand it, that the district court has a sua sponte obligation if it is tending toward a decision that the agency's declarations are insufficient to request those declarations be supplemented by the agency. No request has to be made. But let me finish my sentence so you understand what I'm concerned about. Because the way I heard your argument, and maybe I misunderstood it, was that even after the district court has conducted in-camera review and is satisfied that the government has in its declarations to the district court misrepresented what is the actual decision on the table, then the district court still has an obligation sua sponte to request supplemental declarations, and that that process must be exhausted under FOIA before the district court can order the documents at issue be released to the public. That's not our argument, Judge Rogers, and thank you for that opportunity to clarify. Our view is that once the district court has conducted in-camera review, the district court can rule on whether the document is entitled to be withheld under one of the FOIA exemptions based on the document itself. The district court also has the option of ordering supplemental declarations and pleadings, and this part has indicated there's some virtue in that in some cases because it allows the adversary process to play out, gives the plaintiff a chance to sort of argue against the government's clarified arguments about why a document should be withheld. But once the district court, this is sort of our fundamental submission here, once the district court reviews the document in-camera, the document is part of the summary judgment record, and if the document is self-evidently privileged, as we believe that part two of this memo is, and the district court, it's not available to the court to grant summary judgment to the plaintiff just because the district court thought that the submissions were inadequate. It has to be self-evidently privileged in a way that's commensurate with arguments that the government's making, either in its declarations or in its papers. And just to put ourselves in the shoes of the district court, what the district court saw was a memorandum from the government that said the following, and I'm looking at J193 to 194, and this is the reply memorandum. On 193, the government says, moreover, as a memorandum containing analysis about whether evidence supporting or supports initiating or declining a prosecution, document number 15 fits neatly within a broader category of documents that are generally protected by the deliberative process privilege. And then the next sentence, plaintiff's arguments and response rest only on its misinterpretation of the DOJ special counsel regulations and its own irrelevant speculation unsupported by admissible evidence that the attorney general was not engaged in a legitimate decision on whether to initiate or decline prosecution of the president for obstruction of justice, down at the bottom of the page. For all these reasons, plaintiff's supposition that document number 15 was not part of a deliberation about whether or not to prosecute the president and not overcome the deference to the agency's affidavits. So that's the picture that's been painted for the district court. So the district court is looking later in camera at the memorandum with the mindset that this is the position the government's putting forward. And so the fact that the memorandum, when reviewed in camera, might support a different rationale that the government hasn't put forward, I don't think there's any law that suggests that the district court then has to look at the memorandum, treat it as itself evidence that supports a rationale that the government hasn't put forward to that point. Now, you may think either the government did put forward that rationale or that it was so self-evident that the government must have been putting forward that rationale that the government, that the district court should have seized on that part of the memo. But that's the context in which the district court conducted its in-camera review. Well, Chief Justice Schoonemason, you have read the most damaging parts of our own pleadings to us, but those aren't the only things we said, right? There's, you have to view them, or we wish the district court had viewed them in context of all the other places where we said specifically that the decision that's teed up in this memo is about the sufficiency of the evidence in part two of the special counsel's report and whether that would show an obstruction of justice offense. Again, we thought it was perfectly clear sort of in the world and against the backdrop of this litigation that there wasn't- But I don't think anybody disagrees that that's what the memo was designed to do and was always advertised as being designed to do. But I think we've already established that if that was only an academic exercise, that wouldn't be enough. So it had to be going towards something. And the one obvious thing that usually that assessment goes towards is off the table. But the government's submissions led to the natural impression that that was actually on the table or else the court or anybody else reading it might think, well, then why else would someone have been engaging in that assessment? And if you look at the memo, you see why. But the government hadn't said that. I disagree with your assessment that it suggests that there was an actual prosecution decision being considered because I just think it was perfectly clear that that was not available. And we would never have tried to convince anyone, let alone an article three judge, that Attorney General Bill Barr was actually contemplating bringing criminal charges against then President Donald Trump. No one would have believed it because it was well known that we couldn't do that. But also it wouldn't help us establish that this is a privileged document because the privileged nature of the document does not depend on whether there was an actual prosecution being contemplated. But then the question becomes, if that's off the table, and I will say again, and I know you're not really fighting this, that the government submissions made it look like it might not be off the table. But even if you put that to one side, then the natural question that arises, okay, then why is that assessment being undertaken? And as to that, now we know because section one of the memo tells us. But at the time that the district court rendered its decision, that wasn't out there. That's something that the government would support. But it was known at that point that the Attorney General had made public statements about this sufficiency determination. And so I think it was natural to understand that that's part of the reason that the decision was made. And that's what prompted, in fact, the FOIA request. Again, we have decided not to appeal withholding of part one. Part one actually doesn't talk about making public statements. It gives advice about why this decision should be made and said, if part two of the Mueller report were to become public, we might want to sort of remove the cloud that could be hanging, the cloud of acquisition that could be hanging over then President Trump. And so that is public now. The only, just to respond to the, there was some discussion about what we said on page 11 of our reply brief. That's specifically referring to the part of the memo that's an issue in this appeal, which is part two of the memo, which is not about public relations. It's only about the sufficiency analysis. Yeah, Ms. Harrington, feel free to tell me if you think I'm oversimplifying things here. You speak a little bit. Feel free to tell me if I am oversimplifying things here. We are looking at this case from a different perspective than the district court. It didn't evolve in stages here. We've read the memo, right? We've read the memo. You've told me that the best evidence that this memo is deliberative is the memo itself. So, and this is hypothetical. If I look at the memo, the timing of the memo in relation to the letter to Congress, and who was involved in it, and agree and think the district court was right, that it's not pre-decisional, is that the end of the matter? Or are you saying we have to give the government another chance to convince us in the words of Sierra Club that the memo helped the attorney general formulate his position? I don't think there's a definite answer to that. We would appreciate another chance. But I think if you look at the evidence that's in the record and determine that it's not pre-decisional, and I'll just clarify, the district court didn't actually hold that it wasn't pre-decisional. She expressed doubts about that, but didn't make a holding on that. If you want to make, if you come to the conclusion that it's not pre-decisional based on what's in the record, I think you could rule on that. What this court more often does is remand to the district court for, to give the government another opportunity. And I think the reason- What would we remand for? For the government to maybe submit a supplemental declaration- To do what? I'm sorry, for the government to submit a supplemental declaration giving greater context for how the decision- Why would we do that since, well, maybe we're going over it. Why would we do that since the government already made its case that this was pre-decisional? That's why I started writing in the rebuttal, because I just want to point to the court to how FOIA cases ordinarily work, and the fact that the government doesn't get it right in its first try of talking around a published document- I heard that point, yeah. Doesn't mean that it should- You're right, we do that quite frequently. But since you've told me that the best evidence that this is deliberative is the document itself, where is it? And I think the document does show that it's pre-decisional because it's, again, it's written as advice from a subordinate to superiors. It gives the decision-maker the opportunity to accept or reject the advice. The full-blown declaration described that the substance of the memo was delivered to the attorney general before he made his decision. This court in Need Data Central, which is an old FOIA case, said it would exalt form over substance to say that advice given to a decision-maker is pre-decisional if it's written down beforehand, but not if it's recorded afterwards. And we think that absolutely applies here. Okay, unless there are any further questions, thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Rogers, Tatel